IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

ROBERT RAINEY,                        )
                                      )
    Plaintiff,                        )
                                      )
v.                                    )
                                      )    No. 16-cv-01266-TMP
CAROLYN W. COLVIN, Acting             )
Commissioner of Social                )
Security,                             )
                                      )
    Defendant.                        )
_____

**ORDER AFFIRMING THE COMMISSIONER'S DECISION**
_____

Before the Court is plaintiff Robert Rainey's appeal from a final decision of the Commissioner of Social Security[1] ("Commissioner") denying his application for supplemental security income (SSI) under Title XVI of the Social Security Act (Act), 42 U.S.C. §§ 1381-1385. (ECF No. 1.) The parties have consented to the jurisdiction of the United States magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 12.) The case was reassigned to the undersigned on March 13, 2017. For the following reasons, the Commissioner's decision is affirmed.

## I. FINDINGS OF FACT

Rainey applied for SSI on February 8, 2013, with an alleged

_____
[1] Carolyn W. Colvin was the Acting Commissioner of Social Security at the time this action was filed.

onset date of May 21, 2011.² (R. 178-183.) The claim was denied initially and on reconsideration. (R. 93; 111.) At Rainey's request, an Administrative Law Judge ("ALJ") held a hearing and issued a written decision. (R. 7-26.) In her written decision, the ALJ first found that Rainey had not engaged in substantial gainful activity since the application date. (R. 12.) Second, the ALJ determined that Rainey had the following severe impairments: chronic obstructive pulmonary disease ("COPD"); major depressive disorder; generalized anxiety disorder; and alcohol abuse. (R. 12.) In making this determination, the ALJ first recounted Rainey's testimony that he is unable to work because of persistent shortness of breath and back pain that is a 10 on a scale of 1 to 10. (R. 12.) Rainey testified that he was only taking an over-the-counter pain medication. He also testified that he could not walk farther than 30 to 50 feet; could not lift more than 5 or 6 pounds; and could not stand for more than 20 minutes at a time. (R. 12.)

The ALJ then reviewed the objective medical evidence, to determine if it corroborated Rainey's subjective complaints. Specifically, Rainey saw Danielle Rae Deslauriers, A.P.N., a Nurse

---

²The ALJ noted that the May 21, 2011 alleged onset date was the day after a different ALJ issued a decision denying Rainey's previous applications. (R. 10.) The ALJ also stated that where this previous decision was the final and binding decision on the issue of Rainey's disability through that date, the ALJ was bound by its findings absent new evidence to support findings to the contrary. (R. 10.)

Practitioner at Lifespan Health ("Lifespan"), in February 2013, where he stated that he had fallen and hurt his back and left knee five weeks prior. (R. 13.) His low back and left knee were tender to palpation, but a lumbar spinal x-ray showed only "mild" degenerative changes, and the treatment notes from that day indicated that Rainey's primary purpose for seeking treatment was to gain support for his disability claim. (R. 13.) Specifically, Deslauriers stated that Rainey asked her to fill out and sign disability forms and, when she refused, became angry. (R. 13.) In April 2013, Rainey reported to a hospital emergency room alleging back and chest pain "all the time." (R. 13.) His physical examination was "essentially normal." (R. 13.) Rainey returned to Lifespan in July 2013, reporting intermittent abdominal pain that had lasted for a month, but was improving with Protonix. (R. 13.) A chest x-ray and abdominal CT scan were normal, as were a neurological exam and examination of his extremities. (R. 13.) Rainey also reported his back was sore after falling two days prior, but his gait was normal and he had no problems getting on and off the exam table. (R. 13.) He received an injection of pain medication. (R. 13.) On April 11, 2013, Steve Weaver, M.D., performed a State agency consultative physical exam; his findings were consistent with the Lifespan and emergency room records. (R. 13.) Rainey refused to comply with instructions to lift a 10-pound weight, claiming chest pain, and would not cooperate with gait

testing. (R. 13.) Dr. Weaver found "mild" COPD and acknowledged that he was unsure of the level of effort and participation that Rainey exhibited during the exam. (R. 14.) Dr. Weaver opined that Rainey could lift or carry 20 pounds occasionally and 10 pounds frequently; frequently stand and walk; sit and reach continuously; and frequently stoop, kneel, and climb stairs. (R. 14.) Non-examining State agency medical consultants, Kanika Chaudhuri, M.D., and Nathaniel Robinson, M.D., reviewed the file on April 30, 2013, and August 7, 2013, respectively. (R. 14.) Both concluded that Rainey could perform light work with the occasional postural activities, but needed to avoid concentrated exposure to pulmonary irritants. (R. 14.)

Rainey's attorney referred him to John B. Woods, M.D., for an April 17, 2014 exam. (R. 14.) Dr. Woods reported diffuse mild abdominal tenderness and opined that Rainey could not sustain even sedentary work because he could not lift or carry even 10 pounds, stand for even one hour a day, or sit for more than 30 minutes at a time. (R. 14.) Dr. Woods also opined that Rainey was permanently disabled due to severe COPD. Rainey received inpatient treatment in September 2014 after complaining of dizziness and right ear pain; his symptoms were attributed to alcohol withdrawal and chronic hepatitis C infection. (R. 14.) A physical exam was normal and a head CT and chest x-ray were negative at that time. (R. 14.) Rainey's attorney next referred him to Laura Baker,

F.N.P., for a physical examination on June 15, 2015. (R. 14.) Rainey exhibited no neurological defects or apparent limitations in mental functioning. (R. 14.) Nurse Baker nonetheless reported reduced strength in the upper and lower extremities, back pain at palpation and slow and limping gait. (R. 15.) Volker Winkler, M.D., thereafter signed a medical source statement indicating inability to sustain even sedentary work. (R. 15.) The ALJ determined that the opinion from Dr. Woods, the assessment from Dr. Winkler, and the reported narrative findings from Nurse Baker were unsupported by the record as a whole. (R. 15.) Specifically, the ALJ noted that all were secured by Rainey's attorney for the purpose of supporting his disability claim, and all included purported findings that were directly contradicted by other objective evidence, including the various negative CT scans and x-rays and otherwise normal physical examinations. (R. 15.)

The ALJ also noted that updated evidence warranted a departure from the prior decision's finding of severe physical impairments of degenerative arthritis of the knees and lumbar spine, and hearing loss, in addition to COPD. (R. 15.) Specifically, the ALJ noted that Rainey exhibited no difficulty hearing normal conversational tones at both Dr. Weaver's physical examination and at a psychological examination conducted by Melissa Greer, M.S., and R. Scott Beebe, Ph.D., in September 2013. (R. 15.) Rainey also exhibited no difficulty hearing at the video hearing before the

ALJ. Based on this evidence, the ALJ determined that a severe impairment of hearing loss was not supported. (R. 15.) The ALJ also evaluated the updated evidence in relation to Rainey's previous determination of a severe musculoskeletal impairment of the lumbar spine or knees. (R. 15.) A February 2013 x-ray revealed mild degenerative changes. (R. 15.) In addition, Rainey mainly complained of chest or abdominal pain, with only residual back pain. (R. 15.) And, his gait and mobility were mostly normal, as were his musculoskeletal and neurological exams in September 2014. (R. 16.) Thus, the credible medical reports "consistently show normal gait, station, strength, reflexes, sensation, and pulses," and would "not reasonably support finding any musculoskeletal impairment that significantly limits basic work related functioning on other than a transient basis not close to a duration of 12 months." (R. 16.)

Likewise, the ALJ determined that the updated evidence did not support that previous finding of severe mental impairments, including borderline intellectual functioning (BIF) and a learning disorder with moderate mental functional limitations. (R. 16.) Specifically, Rainey's attorney referred him to David Pickering, Ph.D., for a psychological examination on February 5, 2014. (R. 16.) Dr. Pickering recorded an IQ score of 77, and noted that Rainey was functionally illiterate and had marked limitations in abilities to concentrate, work with others, perform without an

unreasonable number or length of breaks, respond to changes in work settings or procedures, or behave in an emotionally stable manner. (R. 16.) The ALJ determined that Dr. Pickering's findings were as "unsupported as the findings and assessment opinions from the physical exams that the claimant's attorney referred him to" and accordingly afforded them no weight. (R. 16.) The ALJ also noted that Rainey "does not receive mental health treatment[;]" and that the Lifespan and hospital records indicate no significant mental functional limitations other than those attributable to "continuous" alcohol abuse. (R. 16.) Notably, Dr. Weaver described him as exhibiting apparently normal intellectual functioning, as did Ms. Greer and Dr. Beebe. (R. 16.) Furthermore, non-examining State agency psychological consultant Andrew Phay, Ph.D., reviewed the file in March 2013, and concluded that the updated evidence was strong enough to depart from the prior ALJ findings regarding Rainey's mental impairment. (R. 17.) The ALJ stated that the "updated evidence supports the general limitations as previously found but not the combination of impairments as previously specified." (R. 17.) Specifically, the updated evidence supported a finding of chronic depression with associated anxiety in the context of alcohol abuse, but not a BIF and learning disorder. Thus, the ALJ determined that the evidence supported a severe combination of mental impairments that result in moderate limitations, but did not include BIF or a learning

disorder, and the only severe physical impairment supported by the updated record as a whole was COPD. (R. 17.)

Third, the ALJ determined that Rainey did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17.) The ALJ also determined that Rainey retained the residual functional capacity ("RFC") to:

> Perform light work as defined in 20 CFR 414.967(b) except: occasional postural activities (such as climbing, balancing, stooping, kneeling, crouching and crawling); and avoid concentrated exposure to pulmonary irritants; with mental functional ability to understand, remember and carry out simple tasks, maintain concentration, persistence and pace with such tasks with normal breaks spread throughout the day, interact frequently with supervisors and coworkers and occasionally with the public, and adapt to routine changes in workplace.

(R. 18.) The ALJ noted that Rainey's testimony – including that he is unable to work because of persistent shortness of breath, and that his back pain is constantly a 10 out of 10 – was refuted by the weight of the objective evidence. (R. 19.) Accordingly, while Rainey's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Rainey's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible. (R. 19.) The ALJ also noted that this RFC determination accounted for the updated evidence as to Rainey's physical and mental limitations. (R. 19.)

Fourth, the ALJ determined that Rainey could not perform any past relevant work. (R. 19.) Finally, the ALJ determined that,

considering Rainey's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy which he could perform. (R. 20.) In making this determination, the ALJ utilized a vocational expert ("VE"), who opined that, given the RFC finding, Rainey would be able to perform unskilled occupations with a light exertional requirement such as an assembly press operator, production assembler, and hand packer/inspector. (R. 20.) Thus, the ALJ found that Rainey was not disabled. (R. 21.) The Social Security Administration's ("SSA") Appeals Council denied Rainey's request for review, making the ALJ's decision the final decision of the Commissioner. (R. 1.)

Rainey filed the instant action on October 7, 2016. (ECF No. 1.) Rainey first argues that the ALJ erred in finding that Rainey no longer suffered from degenerative arthritis of the knees and lumbar spine at a severe impairment level. (ECF No. 24 at 14.) Rainey also argues that the ALJ's RFC determination that Rainey could perform "light" level work with no mental limitation is not supported by substantial evidence. (Id. at 17.)

## II. CONCLUSIONS OF LAW

**A. Standard of Review**

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a

judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Winn v. Comm'r of Soc. Sec., 615 F. App'x 315, 320 (6th Cir. 2015); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs.,

893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Kiner v. Colvin, No. 12-2254-JDT, 2015 WL 1295675, at *1 (W.D. Tenn. Mar. 23, 2015).

**B.   The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy"

> means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove she has a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520 & 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See 20 C.F.R. §§ 404.1520(d),

404.1525, 404.1526. If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must undertake the fourth step in the analysis and determine whether the claimant has the RFC to return to any past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv) & 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of not disabled must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a)(4).

**C. Whether the ALJ Erred in Finding That Rainey's Degenerative Arthritis of the Knees and Lumbar Spine Were Not Severe Impairments**

Rainey initially submits that the ALJ erred at Step Two by concluding that Rainey no longer suffered from severe knee and back impairments, as the ALJ in Rainey's previous application found. (Compare R. 12 with R. 61.) When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, an ALJ must adopt such a

finding from the previous final decision on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence to such a finding.  See AR 98-4(6), 1998 WL 283902, at *3; Drummond v. Comm'r of Soc. Sec., 126 F.3d 837 (6th Cir. 1997) ("Absent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ.").  Rainey argues that while his "poverty prevented him from obtaining medical evaluation and treatment[,]" such poverty "does not equal medical improvement."  (ECF No. 24 at 16.)  Rainey also submits that the evaluations by Dr. Weaver, Dr. Winkler, and Dr. Woods indicated that Rainey's back and knee problems continued rather than improved.

Here, the ALJ found that the updated evidence "warrant[ed] departure from finding that these impairments" are severe.  (R. 15.)  In making this determination, the ALJ reviewed the updated evidence from the unadjudicated period to determine if such a departure was warranted.  Specifically, the ALJ noted that Rainey underwent additional x-rays of the lumbar spine at Lifespan in 2013, which showed only mild degenerative changes.  (R. 13; 15.) Rainey repeatedly exhibited normal gait, station, strength, reflexes, sensation, and pulses, both at Lifespan and at other emergency room visits, where he complained primarily of back and chest pain.  (R. 16.)  Also in 2013, Dr. Weaver, a consulting

physician, made findings consistent with the Lifespan and emergency room records and opined that Rainey could lift and carry 20 pounds occasionally and 10 pounds frequently. Dr. Chadhuri and Dr. Robinson, non-examining State agency medical consultants, both reviewed the record and concluded that Rainey could perform light work as of 2013. Rainey's musculoskeletal examination was normal as of September 2014. (R. 16.) The ALJ also noted inconsistencies in the opinions of Dr. Woods, Dr. Winkler, and Nurse Baker. Specifically, these opinions were contradicted in relevant part by the other objective medical evidence, including the x-rays, CT spans, and other physical examinations. The ALJ thus determined that, at most, the updated evidence supported a conclusion that Rainey had pain in his back and/or either knee for a "short duration after he fell" but was not suffering from an impairment that would "significantly limit[] basic work related functioning on other than a transient basis not close to a duration of 12 months." (R. 16.)

The ALJ acknowledged the correct legal standard in evaluating Rainey's condition in light of the previous ALJ determination. (R. 10.) And the ALJ further explained why the updated medical examinations, x-rays, and evaluations, warranted departing from the previous ALJ's findings in this limited regard. Because this decision was supported by substantial evidence, it will be affirmed. See Kirk, 667 F.2d at 535.

**D. Whether the ALJ's RFC Determination was Supported by Substantial Evidence**

Rainey next argues that the ALJ failed to provide an analysis of the evidence she considered in formulating his RFC and instead only considered Rainey's impairments at Step Two[3], which addresses a different legal standard. (ECF No. 24 at 18 n.1.) Rainey also argues that, to the extent the court accepts the Step Two analysis as the basis for the RFC determination, the ALJ erred where her "overriding consideration in her step [two] severe impairment analysis seemed to have been whether the evidence was submitted by the government or [Rainey]." (Id. at 18.) A claimant's RFC is "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ must assess the claimant's RFC based on all of the relevant evidence in the record. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); see also SSR 96-8P, 1996 WL 374184, at *3 (S.S.A. July 2, 1996) ("The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."). "[T]he ALJ is charged with the responsibility of evaluating the medical

---

[3]Rainey's brief refers repeatedly to the ALJ's determination at Step One, however, the ALJ's written decision does not include significant analysis at that step, where the ALJ must only consider whether the claimant is engaged in substantial gainful activity. (R. 12.) The court construes Rainey's brief as addressing the ALJ's rationale at Step Two, where she discussed in detail whether and to what extent Rainey suffered from a severe impairment or impairments. (R. 12-17.)

-16-

evidence and the claimant's testimony to form an 'assessment of [her] residual functional capacity.'" Webb v. Comm'r of Soc. Sec., 368 F.3d 629, 633 (6th Cir. 2004) (alteration in original) (quoting 20 C.F.R. § 416.920(a)(4)(iv)). While ALJs may not "cherry pick[] evidence," they may "neutrally . . . weigh[] the evidence." White v. Comm'r of Soc. Sec., 572 F.3d 272, 284 (6th Cir. 2009).

In making the RFC determination, the ALJ initially discussed the credibility of Rainey's testimony. (R. 19.) Rainey does not explicitly dispute this point; nonetheless the court notes that the ALJ's determination of Rainey's credibility was supported by substantial evidence. See Shepard v. Comm'r of Soc. Sec., No. 17-1237, 2017 WL 4251707, at *4 (6th Cir. Sept. 26, 2017) (quoting Ritchie v. Comm'r of Soc. Sec., 540 F. App'x 508, 511 (6th Cir. 2013)); Rogers, 486 F.3d at 249. The ALJ also considered the updated record as a whole in determining Rainey's RFC, as required. The ALJ considered the opinions of Dr. Winkler and Dr. Pickering and explained that, because they were unsupported by the record as a whole, they were afforded no weight. Specifically, the medical records from Lifespan and Dr. Weaver, and the consultative reviews of Dr. Chaudhuri and Dr. Robinson all contradicted the findings that Rainey seeks to rely upon. Rainey does not contend, nor is there evidence in the record to establish, that either Dr. Winkler or Dr. Pickering was a "treating physician," whose opinion was entitled to controlling weight. See 20 C.F.R. § 416.902; Staymate

-17-

v. Comm'r of Soc. Sec., No. 16-3896, 2017 WL 902136, at *3 (6th Cir. Mar. 7, 2017). The decision as to the weight to assign each medical opinion is reserved for the ALJ. See Justice v. Comm'r of Soc. Sec., 515 F. App'x 583, 588 (6th Cir. 2013) (unpublished). The ALJ pointed to specific evidence in the record that led her to assign greater weight to the state agency and treating physicians' opinions, and less (or no) weight to the physicians procured by Rainey's attorney. The above discussion further refutes Rainey's argument that the ALJ "overriding consideration in her step [two] severe impairment analysis seemed to have been whether the evidence was submitted by the government or [Rainey]." The ALJ, as required, reviewed the medical evidence and the claimant's testimony to form an assessment of his residual functional capacity. See 20 C.F.R. § 416.920(a)(4)(iv); Webb, 368 F.3d at 633 20 C.F.R. § 416.920(a)(4)(iv)). And the written opinion also reveals that the ALJ neutrally weighed the evidence, as required. White, 572 F.3d at 284. Because the ALJ's conclusion regarding the weight to assign each medical opinion was supported by substantial evidence, it will be affirmed.

### III. CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

s/ Tu M. Pham  
TU M. PHAM

United States Magistrate Judge

June 20, 2018
Date